## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE JUDGE LEO M. GORDON**

| | |
|---|---|
| SWEET HARVEST FOODS, )<br><br>Plaintiff, )<br><br>and )<br><br>EXPORT PACKERS COMPANY LIMITED,<br>HONEY HOLDING, LLP DBA HONEY<br>SOLUTIONS, SUNLAND TRADING, INC.,<br>NATIONAL HONEY PACKERS & DEALERS<br>ASSOCIATION (NHPDA) )<br><br>Consolidated Plaintiffs, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>AMERICAN HONEY PRODUCERS<br>ASSOCIATION, and SIOUX HONEY<br>ASSOCIATION, )<br><br>Defendant-Intervenors. ) | Consol. Court No. 22-00188 |

## <u>PROPOSED ORDER</u>

Upon consideration of Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record,

Defendant's and Defendant-Intervenors' Responses thereto, and all other papers and proceedings

in this case, it is hereby

**ORDERED** that Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record is denied, and it is further

**ORDERED** that the affirmative critical circumstances determination of the U.S. International Trade Commission with respect to imports of raw honey from Vietnam is affirmed.

_____
Judge Leo M. Gordon

Date: _____, 2023
New York, New York

**NONCONFIDENTIAL**

### UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE , JUDGE LEO M. GORDON**

| | |
|---|---|
| SWEET HARVEST FOODS, | ) |
| Plaintiff, | ) |
| and | ) |
| EXPORT PACKERS COMPANY LIMITED, HONEY HOLDING, LLP DBA HONEY SOLUTIONS, SUNLAND TRADING, INC., NATIONAL HONEY PACKERS & DEALERS ASSOCIATION (NHPDA) | ) |
| Consolidated Plaintiffs, | ) Consol. Court No. 22-00188 |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| AMERICAN HONEY PRODUCERS ASSOCIATION, and SIOUX HONEY ASSOCIATION, | ) |
| Defendant-Intervenors. | ) |

### DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

R. ALAN LUBERDA
KATHLEEN W. CANNON
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP

**Counsel to American Honey Producers Association and Sioux Honey Association**

April 10, 2023

NONCONFIDENTIAL

# Table of Contents

**Page**

I.     THE COMMISSION RELIED UPON THE PROPER TIME PERIOD TO ASSESS THE STATUTORY CRITICAL CIRCUMSTANCES FACTORS.................................................................................................1

     A.    The Statute, Legislative History and Commission Precedent Support Comparing the Pre-Petition and Post-Petition Periods Leading Up to Provisional Measures in Assessing the Increase in Imports and Inventories in a Critical Circumstances Analysis...............................1

     B.    The Statute Requires an Assessment of Increases in Import Inventories, Not an Examination of "Current" Inventory Levels, in Determining if Imports Would Undermine Relief....................................4

     C.    Plaintiffs' Proposed Approach Would Allow Importers to Avoid Retroactive Duties Where the Statutory Factors Are Met By Quickly Selling Product Into the Market....................................7

II.    PLAINTIFFS' CLAIM THAT THE COMMISSION PAPERED OVER MISSING INVENTORY DATA WITH ASSUMPTIONS AND GUESSWORK IS WRONG........................................................8

     A.    Plaintiffs' Selective, Updated Importer and Packer Inventory Data Show that Inventories Remained Significant in 2022.............................8

     B.    Plaintiffs Neither Requested End User Inventory Data Nor Carried Their Burden of Producing Information Within Their Possession.......................10

III.   CONCLUSION.................................................................................12

NONCONFIDENTIAL

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

Chemours Co.. FC, LLC v. United States,
  443 F. Supp. 3d 1315 (CIT 2020) ..........................................................................3

Mexichem Fluor Inc. v. United States,
  179 F. Supp. 3d 1238 (Ct. Int'l Trade 2016) ......................................................10

MTD Products, Inc. v. United States,
  Slip Op. 23-34 (March 16, 2023) .......................................................................6, 7

Nucor Corp. v. United States,
  414 F.3d 1331 (Fed. Cir. 2005) .............................................................................3

United States v. Eurodif S.A.,
  555 U.S. 305 (2009) ................................................................................................3

Zenith Elecs. Corp. v. United States,
  988 F.2d 1573 (Fed. Cir. 1993) ...........................................................................11

### Statutes and Regulations

19 U.S.C. §§ 1671d(b)(4)(A)(ii), 1673d(b)(4)(A)(ii) .....................................................1

19 U.S.C. § 1673d(b)(4)(A)(i) ........................................................................................2

19 U.S.C. § 1673d(b)(4)(A)(ii)(ii) ..............................................................................4, 5

19 U.S.C. § 1673d(b)(4)(A)(ii)(III) ................................................................................5

### Legislative

Uruguay Round Agreements Act, Statement of Administrative Action,
  H.R. Doc. No. 103-316(I) (1994) ("SAA") ..........................................................2

H.R. Rep. No. 317, 96th Cong., 1st Sess. 63 (1979) .....................................................3

### Administrative Decisions

Emulsion Styrene-Butadiene Rubber from Brazil, et al.,
  USITC Pub. 4717 (Sept. 2017) ..............................................................................4

Laminated Woven Sacks from China,
  USITC Pub. 4025 (Final) (July 2008) .....................................................................4

**NONCONFIDENTIAL**

Light-Walled Rectangular Pipe from China et al.,
   USITC Pub. 4024 (Final) (July 2008)........................................................................4

Polyester Staple Fiber from China,
   USITC Pub. 3922 (Final) (June 2007)........................................................................4

Raw Honey From Argentina:
   Final Determination of Sales at Less Than Fair Value and Final Affirmative
   Determination of Critical Circumstances, 87 Fed. Reg. 22,184 (Dep't
   Commerce Apr. 14, 2022) ...........................................................................................2

Raw Honey from Argentina, Brazil, India, and Vietnam,
   USITC Pub. 5327 (Final) (May 2022)........................................................................1

Raw Honey From the Socialist Republic of Vietnam:
   Preliminary Affirmative Determination of Critical Circumstances in the
   Less-Than-Fair-Value Investigation, 87 Fed. Reg. 2,127 (Dep't Commerce
   Jan. 13, 2022)..............................................................................................................2

NONCONFIDENTIAL

On behalf of the American Honey Producers Association and Sioux Honey Association ("Defendant-Intervenors" or "Petitioners"), we respond to the brief filed on behalf of Sweet Harvest Foods, Export Packers Company Limited, Honey Holding I, LLP dba Honey Solutions, and Sunland Trading, Inc., and is joined by the National Honey Packers & Dealers Association ("NHPDA") (collectively, "Plaintiffs").  Defendant-Intervenors support the affirmative critical circumstances determination issued by the U.S. International Trade Commission ("Commission" or "ITC") in <u>Raw Honey from Argentina, Brazil, India, and Vietnam</u>, USITC Pub. 5327 (Final) (May 2022) (PR 193), and accompanying confidential views of the Commission ("Views") (CR 813, PR 190).

## I.   THE COMMISSION RELIED UPON THE PROPER TIME PERIOD TO ASSESS THE STATUTORY CRITICAL CIRCUMSTANCES FACTORS

### A.   The Statute, Legislative History and Commission Precedent Support Comparing the Pre-Petition and Post-Petition Periods Leading Up to Provisional Measures in Assessing the Increase in Imports and Inventories in a Critical Circumstances Analysis

Plaintiffs' challenge to the Commission's critical circumstances finding rests primarily on their assertion that the period of time the Commission examined to reach its conclusion with respect to import inventories was improper.  Pl. Br. at 13-18.  Plaintiffs admit their argument is not based on law or precedent but urge the Court to accept it based on "logic."  <u>Id.</u> at 14.  There is neither logic nor law to support Plaintiffs' argument.

The critical circumstances statute requires the Commission to consider two specific factors – (1) "the timing and volume of the imports," and (2) "a rapid increase in inventories of the imports" – as well as "any other circumstances indicating that the remedial effect of the {order} will be seriously undermined."  19 U.S.C. §§ 1671d(b)(4)(A)(ii), 1673d(b)(4)(A)(ii).  As the Commission stated in its Views and further detailed in its brief, to assess both the volume and

inventory factors set forth in the statute, it compares the period immediately prior to the petition filing with the period immediately after the petition filing leading up to the imposition of provisional measures. Views at 62 (CR 813, PR 190); ITC Br. at 11-12, 14-15; see also Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316(I) at 877 (1994) ("SAA"). Notably, Plaintiffs state that they do not challenge the time period on which the Commission relied to assess the significance of the import volume increase, even though that period was precisely the same period as the period the Commission relied upon to examine the rapid increase in import inventories. Pl. Br. at 13.

The Commission's brief lays out in detail the statutory underpinnings supporting its reliance on the pre- and post-petition periods it selected for its assessment of the volume and inventory factors for its critical circumstances findings. ITC Br. at 9-15, 27-29. In particular, the statute requires the Commission to consider the imports subject to Commerce's affirmative critical circumstances determination in examining the statutory critical circumstances factors. 19 U.S.C. § 1673d(b)(4)(A)(i). Commerce's determination examined imports from Vietnam during the post-petition period leading up to suspension of liquidation and imposition of provisional measures. See Raw Honey From the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Critical Circumstances in the Less-Than-Fair-Value Investigation, 87 Fed. Reg. 2,127, 2,129 (Dep't Commerce Jan. 13, 2022); Raw Honey From Argentina: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, 87 Fed. Reg. 22,184, 22,185 (Dep't Commerce Apr. 14, 2022). The Commission, too, relied on the same post-petition period, focusing on the same imports that occurred prior to the imposition

of provisional measures.  Views at 66-67 (CR 813, PR 190).  The Commission's reliance on that

period was, thus, in accord with the statute.[1]  As the legislative history explains,

> This provision is designed to provide prompt relief to domestic
> industries suffering from large volumes of, or a surge over a short
> period of, imports and to deter exporters whose merchandise is
> subject to an investigation from circumventing the intent of the
> law by increasing their exports to the United States <u>during the
> period between initiation of an investigation and a preliminary
> determination by the Authority</u>.

H.R. Rep. No. 317, 96th Cong., 1st Sess. 63 (1979) (emphasis added).  As this passage makes

clear, the entire purpose of the critical circumstances provision is to prevent imports from

surging into the U.S. market, and importers from stockpiling inventories, during the period

leading up to imposition of provisional measures as a means of evading the duties and

undermining the relief provided once duties are imposed.  The provision ensures that once a

trade case is filed, exporters do not seize the opportunity to flood the U.S. market with dumped

imports before provisional measures are imposed to evade the duties and to continue to harm

U.S. producers.

As a result of the plain statutory language and legislative history, the Commission's

longstanding practice in assessing the volume and inventory factors is to compare import

---

[1]    Absent any statutory direction, Plaintiffs' argument that the Commission could not rely upon
the period it did to assess critical circumstances would still fail.  The Court has long recognized
that in the absence of a statutory directive, the Commission has discretion to select its
methodology and to select its period of investigation.  See <u>United States v. Eurodif S.A.</u>, 555
U.S. 305, 316 (2009) (An agency's "interpretation governs in the absence of unambiguous
statutory language to the contrary or unreasonable resolution of language that is ambiguous.")
(citations omitted); <u>Nucor Corp. v. United States</u>, 414 F.3d 1331, 1337 (Fed. Cir. 2005) ("the
Commission has broad discretion with respect to the period of investigation that it selects for
purposes of making a material injury determination . . . because the statute 'does not expressly
command the Commission to examine a particular period of time'") (internal quotation and
citation omitted); <u>Chemours Co.. FC, LLC v. United States</u>, 443 F. Supp. 3d 1315, 1330 (CIT
2020) ("{t}he Commission has broad discretion to choose the POI.").

volumes and inventories in the period (generally the six months) leading up to the filing of the petition with the six-month period after the filing of the petition.[2]  Here, the Commission found both a significant increase in and high volumes of imports over that period as well as a rapid increase in inventories of imports.  Views at 69-73 (CR 813, PR 190).  Plaintiffs do not challenge that there was a significant increase in import volumes or of inventories over that period; they simply argue that the Commission should instead have looked at inventory levels well after provisional duties were imposed.  Not only is the time period the Commission adopted consistent with law and past practice, but the approach Plaintiffs advocate is contradictory to the plain language of the statute and its purpose as discussed next.

**B.**     **The Statute Requires an Assessment of Increases in Import Inventories, Not an Examination of "Current" Inventory Levels, in Determining if Imports Would Undermine Relief**

In contending that the Commission had an obligation to examine current inventory levels in reaching its critical circumstances decision, Plaintiffs ignore the plain language of the statute. The statute directs the Commission to examine whether there has been "a rapid increase in inventories of the imports."  19 U.S.C. § 1673d(b)(4)(A)(ii)(ii) (emphasis added).  Thus, the statutory directive requires an assessment of whether inventories increased prior to the suspension of liquidation, as discussed above.  It does not direct the Commission to consider, as Plaintiffs urge, what the remaining level of inventories are at some point in time after the

---

[2]     See Emulsion Styrene-Butadiene Rubber from Brazil, et al., USITC Pub. 4717 (Final) (Sept. 2017) at 33 ("Unless the industry under investigation involves seasonality or the Commission decides that circumstances warrant otherwise, the Commission generally compares six months of data gathered from the periods immediately preceding and following the petitions' filing, with the earlier period including the month in which the petitions were filed.") (citing, e.g., Laminated Woven Sacks from China, USITC Pub. 4025 (Final) (July 2008) at 48-50; Light-Walled Rectangular Pipe from China et al., USITC Pub. 4024 (Final) (July 2008) at 18-19; Polyester Staple Fiber from China, USITC Pub. 3922 (Final) (June 2007) at 35)); see also ITC Brief at 12 (citing Views at 66 (CR 813, PR 190)).

imposition of provisional measures leading up to the Commission's vote.  See Pl. Br. at 7-8, 16-17 (citing to Commissioner Johanson's negative critical circumstances finding at 8-10 (CR 814; PR 190)).[3]

Apparently recognizing that their argument does not comport with the statutory language addressing inventories, Plaintiffs next contend that the Commission must look at current inventory levels to determine whether such levels would undermine relief.  Pl. Br. at 11-13.  The statutory language, however, is explicit as to how the Commission is to examine inventories -- by considering whether there has been "a rapid increase" in those inventories leading up to the imposition of provisional duties, not by examining current inventory levels after provisional measures are imposed.  19 U.S.C. § 1673d(b)(4)(A)(ii)(II).

After the statute directs the Commission explicitly as to how to consider import volumes and inventories, it then instructs the Commission to consider "any other circumstances indicating that the remedial effect of the {order} will be seriously undermined."   19 U.S.C. § 1673d(b)(4)(A)(ii)(III) (emphasis added).  Other circumstances would be factors other than the volume and inventory factors, such as the pricing effects of the imports and demand for the product in the market, as the Commission recognized below.  Views at 71-72 (CR 813, PR 190). As Defendant explains, the Commission properly considered those factors to provide further

---

[3]   Not only is Plaintiffs' contention that the Commission must examine current inventory levels unsupported by the statutory critical circumstances requirements, it is also unworkable given the statutory deadlines and time constraints imposed on the Commission. As the Commission pointed out in its brief, there is a limit on the time period for which the Commission can gather data from interested parties given the statutory deadline to which it is subject and given the statutory requirements that information be released to parties and parties be permitted to comment on all record information.  ITC Br. at 32-33.  This practical limitation is another reason Courts have given broad discretion to the Commission to define its periods for data analysis.  See n.1.

NONCONFIDENTIAL

indication that the surging volumes of imports and rapid increases in inventories would undermine relief from the order.  ITC Br. at 12-14, 24-27.  There is no statutory directive that the Commission consider current inventory levels, or consider the degree to which importers have sold off the inventories they had rapidly built up in the period leading up to provisional measure imposition, in assessing whether the imports subject to Commerce's affirmative critical circumstances finding would undermine relief from the order.

Indeed, a recent decision of this Court sustained the Commission's affirmative critical circumstances finding, including its finding of a rapid increase in imports before provisional measures were imposed and a recognition of how such action undermines relief.  In MTD Products, Inc. v. United States, Slip Op. 23-34 (March 16, 2023), this Court first sustained the Commission's comparison of six month pre- and post-petition comparison periods in assessing the import volume increase and the rapid increase in inventories.  Id. at 16-17.  In examining the import inventories, the Commission pointed to the "large stockpile of imports prior to the imposition of provisional duties" and found the "result was that U.S. purchasers had less need to buy" subject product.  Id. at 8.  The Commission further concluded that these inventories of low-priced imports "represented orders that the domestic industry did not have an opportunity to obtain, and that these inventories would "protract the adverse impact of the imports" and thus "undermine seriously the remedial effect of the antidumping duty order.'"  Id. at 18-19.  The MTD Court sustained the Commission's finding based on these facts.  Id. at 20-21.

The Commission's analysis of record data on import volume increases and the rapid increase in inventories in this case mirrors the approach it took in the case underlying the MTD decision.  In this case, the Commission examined the six month pre- and post-petition periods to determine whether there had been an import volume surge and whether there was a rapid

NONCONFIDENTIAL

increase in inventories.  Views at 66-67.  In neither case did the Commission examine current inventory levels or the extent importers offloaded their stockpiled product because those inventories already reflected orders the domestic industry did not have the opportunity to obtain and thus protracted the adverse impact on the U.S. industry.[4]

### C.   Plaintiffs' Proposed Approach Would Allow Importers to Avoid Retroactive Duties Where the Statutory Factors Are Met By Quickly Selling Product Into the Market

In the end, Plaintiffs are essentially asking this Court to give them an "out" from the retroactive imposition of duties, notwithstanding the surge in import volumes and the rapid increase in inventories that were built up right before provisional measures were imposed, IF they are able to sell those inventories quickly into the U.S. market.  The statute does not provide for any such an exception.  Indeed, allowing importers that have taken steps to beat the imposition of duties by racing product into the U.S. market and stockpiling those imports to then evade retroactive duties by quickly selling off the imports to another company would thwart the entire purpose of the provision.

As the Commission found here, the actions by the importers of the Vietnamese honey showed "a deliberate effort to enter product into the U.S. market in substantial and increasing volumes while evading potential exposure to the retroactive application of antidumping duties." Views at 72 (CR 813, PR 190).  Plaintiffs' contention that if the inventories are sold off by importers, they can no longer cause harm or undermine relief from the order is wrong.  See Pl.

---

[4]     As is also true in this case, Commissioner Johanson dissented from the majority's critical circumstance finding in the case underlying the MTD appeal, but the Court recognized that the possibility of drawing different conclusions on the basis of the evidence does not provide the agency's finding from being supported by substantial evidence.  Slip Op. 23-34 at 20-21.  A similar conclusion should follow here, notwithstanding the views of a dissenting commissioner, as the Commission explains in further detail.  ITC Br. at 44-45.

NONCONFIDENTIAL

Br. at 33-35.  Dumped imports of honey from Vietnam that flooded the U.S. market and were stockpiled to beat the imposition of provisional duties were then sold into the market at exceedingly low prices, causing continued pricing and financial harm to U.S. producers and taking sales from U.S. producers.  Whether that honey was still in the supply chain at a company like an ingredients purchaser or had been sold off to an end user at the time the order was issued, the low prices affected U.S. prices and meant purchasers did not need to buy domestic honey, thus undermining relief from the order.  <u>See</u> ITC Br. at 30-31.

Importers that undertake deliberate efforts to evade trade law remedies by ramping up import volumes and inventories before provisional measures are imposed, as the Commission found occurred here, should not be allowed to avoid the consequences of their actions simply by moving the product quickly out of inventory.  Neither the law nor the logic on which Plaintiffs rely supports such an outcome.

**II.    PLAINTIFFS' CLAIM THAT THE COMMISSION PAPERED OVER MISSING INVENTORY DATA WITH ASSUMPTIONS AND GUESSWORK IS WRONG**

**A.    Plaintiffs' Selective, Updated Importer and Packer Inventory Data Show that Inventories Remained Significant in 2022**

Plaintiffs argue the Commission failed to take into account inventory data Plaintiffs submitted in their posthearing brief showing inventory levels through March 2022.  Pls. Br. at 20 (citing NHPDA Posthrg. Brf. at 14-15 and Exh. 4 (CR 788)).  This is simply not true.  The Commission analyzed affidavits provided in Plaintiffs' posthearing brief from certain purchasers of Vietnamese honey,  [

]  <u>Id.</u>; Views at 73-74 (CR 813, PR 190).  The Commission observed that [

]  claim  was  inconsistent  with  the  [

]

Views at 74 n.306 (CR 813).  The Commission's findings demonstrate that it considered the evidence submitted by Plaintiffs, which continued to demonstrate the presence of significant inventories in March 2022.  Id.  Contrary to Plaintiffs' claims that the Commission ignored this evidence regarding 2022 inventory levels and instead relied on "guesswork", the Commission's findings were grounded in the record evidence.

Moreover, Plaintiffs' affidavits account for [                    ] purchasers of Vietnamese honey and thus fail to paint a complete and accurate picture of Vietnamese honey inventory levels in March 2022.  See NHPDA Posthrg. Brf. at 14-15, and Exhs. 3B and 4 (CR 788)).  For example, absent from Plaintiffs' submission is inventory information for [


] Also absent from the Plaintiffs' administrative submissions was any inventory information from the ingredients purchasers to refute [


] Views at 74 n.306.  The-ingredient purchasers, [                ] actively participated in the final phase of the investigations and were witnesses at the Commission's hearing, and thus were in the position to submit any evidence they deemed relevant to the Commission's analysis.  Id.  Complete data would reveal even higher inventory levels in March 2022 than those disclosed by Plaintiffs.

NONCONFIDENTIAL

**B.**   **Plaintiffs Neither Requested End User Inventory Data Nor Carried Their Burden of Producing Information Within Their Possession**

Plaintiffs now claim that the Commission should have collected end user inventory data to consider in its critical circumstances analysis.  As the Commission explains, Plaintiffs failed to exhaust their administrative remedies with respect to this argument because they never asked the Commission to collect such data during the investigation despite having had the opportunity to do so.  See ITC Br. at 19-22.  The Commission has recognized that a party's failure to comment on draft questionnaires and to seek the solicitation of data on which it intends to rely in presenting its arguments precludes it from later complaining about the absence of such data or, as here, developing its own theoretical constructs in the absence of such data.  See ITC Br. at 19-22.  The Court's finding in Mexichem Fluor Inc. v. United States, while not involving a critical circumstances finding, is instructive:

> The Commission here applied its normal practice in defining the POI for the final phase of its investigations as 2011-13 and the first halves of 2013 and 2014.  Mexichem did not challenge this decision below by requesting that the Commission expand the POI to include 2010 and to collect data covering 2010.  Just because Mexichem now identifies a different methodology that might support its own narrative does not mean that the Commission's normal practice is unlawful.

Mexichem Fluor Inc. v. United States, 179 F. Supp. 3d 1238, 1254 (Ct. Int'l Trade 2016).  Plaintiffs actively participated in every phase of this investigation – the preliminary phase, comments on draft questionnaires, and the submission of questionnaires and briefing during the final phase – and had every opportunity to request the collection of any data they viewed as relevant.  Plaintiffs never requested that the Commission collect the data they now claim is crucial to the critical circumstances analysis.

Despite never having asked the Commission to gather end user inventory data, Plaintiffs'

submitted selective inventory data in their post-hearing brief, thereby demonstrating another

avenue for them to provide any inventory data they viewed as relevant.[5]  See NHPDA Post-Hrg.

Br. at Exhs. 3 and 4 (CR 788); see also supra Section II.A.  To the extent Plaintiffs claim that

inventory data within their possession is missing from the record, that is of their own doing.  The

burden of production in an ITC proceeding falls squarely on the party in possession of the

information, such that Plaintiffs were obligated to develop the record and submit inventory data

in their possession.  See Zenith Elecs. Corp. v. United States, 988 F.2d 1573, 1583 (Fed. Cir.

1993) ("The burden of production should belong to the party in possession of the necessary

information.").  As noted above, the select inventory data they submitted pertained to only

certain importers or packers, and were missing data from certain parties that even participated in

the Commission's hearing and were represented by counsel, including [

] Plaintiffs thus had ample opportunity to submit any data they viewed as

important or relevant to the investigation.

Plaintiffs' argument to the Court that the inventory data on the record is incomplete is

also in conflict with their position before the ITC that the relevant data for 2022 were on the

record.  In their posthearing brief, Plaintiffs argued that the record contained monthly inventory

---

[5]   Plaintiffs claim that timing prevented them from submitting complete inventory data
because Petitioners provided evidence of end-users purchasing large volumes of Vietnamese
honey "extremely late in the investigation."  Pl. Br. at 22-23.  This claim is meritless.
Petitioners' evidence was submitted in their pre-hearing brief, the first substantive filing by
parties in a final phase of an ITC investigation and the first opportunity for Petitioners to raise
this argument.  See Pet. Prehrg Br. at 109-111 and Exh. 4 (CR 746).  Respondents (Plaintiffs
here) then had ample time to address it either at the hearing or in posthearing briefs.  Further, that
Respondents did provide inventory data in their posthearing brief for certain
importers/purchasers, but then failed to provide it for others that actively participated in the
investigation, completely undermines their claim that timing prevented them from addressing the
evidence.

NONCONFIDENTIAL

data through March 2022 for "numerous" importers and packers showing that inventory levels declined, but never argued that data was incomplete or that the Commission should have sought additional inventory level information from the parties.  NHPDA Post-Hrg. Br. at Exh. 3 (CR 788); see also ITC Br. at 22-23.  In any case, Plaintiffs' claim is meritless because they bore the burden to build the record and submit any data they believed relevant to the Commission's analysis.

III.   **CONCLUSION**

For these reasons, we respectfully urge the Court to affirm the Commission's affirmative critical circumstances determination with respect to imports of raw honey from Vietnam.

Respectfully submitted,

 /s/  R. Alan Luberda
R. ALAN LUBERDA
KATHLEEN W. CANNON
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

**Counsel to American Honey Producers Association
and Sioux Honey Association**

Dated:  April 10, 2023

**CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES**

Pursuant to this Court's Order dated October 13, 2022 (ECF No. 25), setting the word limitation to the Response Brief of Defendant-Intervenors American Honey Producers Association and Sioux Honey Association to 7,000 words, counsel for Defendant-Intervenors certifies that the attached Reply Brief contains **3,764 words**, including footnotes.  The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.

Respectfully submitted,

/s R. Alan Luberda
R. ALAN LUBERDA
KATHLEEN W. CANNON
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to American Honey Producers
Association and Sioux Honey Association

Dated:  April 10, 2023